IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIE BLEDSOE,

Plaintiff,

No. CIV S-06-0703 GGH

vs.

MICHAEL J. ASTRUE,[1], Commissioner of Social Security,

ORDER

Defendant.

_________________________________/

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment or Remand is granted in part, the Commissioner's Motion for Summary Judgment is denied, and this matter is remanded pursuant to Sentence Four of 42 U.S.C. § 405(g), to the ALJ for further findings as directed in this opinion. The Clerk is directed to enter judgment for plaintiff.

\\\\\

[1] Michael J. Astrue became Commissioner on February 12, 2007. Accordingly, he should be substituted as defendant in this suit. Fed. R. Civ. P. 25(d)(1). No further action need be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

BACKGROUND

Plaintiff, born April 26, 1960, applied for disability benefits on December 15, 2003. (Tr. at 91.) Plaintiff alleged he was unable to work since October 1, 2003, due to liver problems, breathing problems, pain and weakness in legs, low back pain, fatigue, Graves' disease, hypertension, vision problems, and coronary artery disease. (Tr. at 91, 100, 126, 19.) In a decision dated July 8, 2005, ALJ James M. Mitchell determined plaintiff was not disabled.[2] The ALJ made the following findings:

1. The claimant filed an application for supplemental security income payments on December 15, 2003, alleging disability beginning on October 1, 2003.

2. The claimant is 45 years old, is a high school graduate, and worked in the past as a laborer.

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

3. The claimant has not engaged in substantial gainful activity since his alleged onset date.

4. The claimant has the following medically determinable impairments: Graves' disease and mild osteoarthritis.

5. These medically determinable impairments significantly limit his ability to perform basic work activities.

6. It has not been established that the claimant has any impairment or impairments that meet or equal the criteria set forth in any applicable section of the Listing of Impairments found at 20 C.F.R., Part 4040, Subpart P, Appendix 1.

7. The claimant has the residual functional capacity to perform light work with a slight limitation in his ability to maintain concentration or pay attention, a moderate limitation in his ability to engage in gross manipulation on the right upper extremity, and a slight limitation in his ability to perform simple, repetitive tasks while bearing a slight to moderate level of pain.

8. The claimant is precluded from performing his past relevant work by his medically determinable impairments.

9. Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.20 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a cashier, of which there are 17,000 such jobs existing in the State of California; the position of assembler, of which there are 19,400 such jobs existing in the State of California; and the position of fast food worker, of which there are 4800 such positions in the State of California.

10. The claimant's subjective statements regarding pain and other symptoms have been considered but to the extent that those statements constitute an allegation that the claimant has been precluded from engaging in all substantial gainful activity by a medically determinable impairment or impairments for a period of time which has lasted or reasonably can be expected to last for 12 continuous months, they are not found credible.

11. The claimant was not disabled within the meaning of the Social Security Act, at any time on or before the date of this decision.

(Tr. at 24-25.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Failed to Provide Clear and Convincing Reasons for Rejecting Plaintiff's Testimony Regarding the Severity of His Symptoms; B. Whether the ALJ Violated the Treating Physician Rule; C. Whether the ALJ Overlooked Significant Relevant Evidence in Determining Plaintiff's Residual Functional Capacity; and D. Whether the ALJ's Vocational Finding Improperly Conflicts With the Dictionary of Occupational Titles.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

ANALYSIS

A. The ALJ Properly Evaluated Plaintiff's Credibility

Plaintiff contends that the ALJ erred in discrediting the degree of his symptoms.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ who used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit

credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc). The ALJ may not find subjective complaints incredible solely because objective medical evidence does not quantify them. Id. at 345-46. If the record contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ then considers the nature of the alleged symptoms, including aggravating factors, medication, treatment, and functional restrictions. See id. at 345-47. The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) daily activities.[3] Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct, may also be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990). Absent affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony must be clear and convincing. Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

---

[3] Daily activities which consume a substantial part of an applicants day are relevant. "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quotation and citation omitted).

Plaintiff contends that his Graves Disease and osteoarthritis were found to be severe impairments, and along with documented liver dysfunction, the ALJ's decision to refute his testimony based on lack of objective evidence cannot stand. He also objects to the ALJ's reliance on Dr. Diep's lack of objective findings, and rejection of plaintiff's need for a cane based on lack of medical evidence.

The ALJ found plaintiff's complaints not credible to the extent that he alleged an inability to do all work. He found instead that plaintiff could do a modified range of light work. The ALJ first outlined the objective medical evidence which he analyzed as yielding minimal results. No physician ever found that plaintiff was precluded from all work for any twelve month period, citing numerous records. He then stated that objective testing showed only minimal findings, including a normal chest x-ray, no evidence of cardiopulmonary disease, normal echocardiogram, and only very mild osteoarthritis. He further noted that plaintiff's treating physician, Dr. Diep, found no objective evidence of disability. The ALJ added that although plaintiff claimed he needed a cane for his right leg, no doctor ever indicated such a need, and the consultative examiner noted that he did not in fact use a cane. (Tr. at 22.) This examiner also noted that plaintiff ambulated alternately between a limp and a normal gait. (Id. at 23.)

Plaintiff first points to other objective evidence in the record indicating plaintiff's ordered restriction from work between March and June, 2004. It is true that doctors restricted plaintiff from work during these dates; however, there is no evidence that plaintiff was ever found to be permanently not permitted to return to work. (Id. at 411.) On July 29, 2004, Dr. Diep opined that plaintiff should not work for at least three months until cardiac catheterization and all other tests and treatments were completed, or until October 1, 2004. This opinion was based on a diagnosis of coronary artery disease. (Id. at 260, 265.) Subsequently, however, Dr. Diep noted only that plaintiff was precluded from lifting more than 15 pounds for one month, citing back problems. There was no mention of coronary artery disease or restrictions thereof, in that November 22, 2004 report. (Id. at 324.) The echocardiogram and cardiac catheterization

done in the interim indicated normal coronary arteries. (Id. at 335.)

Plaintiff was always returned to work after various medical problems. On October 10, 2002, plaintiff was cleared for modified duty after a groin injury in September, 2002. (Id. at 162.) On November 4, 2002, plaintiff was cleared to full work duties. (Id. at 297.) On April 26, 2004, plaintiff's disability due to Graves Disease and hypertension was expected to last until June 1, 2004 only. (Id. at 411.)

Plaintiff refers to his various ailments to refute the ALJ's credibility assessment; however, the restrictions resulting from these impairments do not appear to be severe as claimed. For example insomnia, blurred vision, eye pain, chest pain, headaches, and a diagnosis of mild osteoarthritis do not rise to a level warranting disability without evidence that they are so disabling. Rather, the evidence shows a normal chest x-ray, successful cardiac catheterization indicating no coronary artery disease, normal echocardiogram, and very mild osteoarthritis. (Id. at 146, 335, 358, 328.) Further, in response to subjective complaints of back pain and blurry vision on May 18, 2004, the treating physician referred plaintiff for follow up by an endocrinologist and ophthalmologist, but opined that there were no objective findings to support disability. Hypertension was noted to be in good control at this time. Despite a prior diagnosis of Graves Disease and osteoarthritis, there was no planned course of treatment mentioned. (Id. at 173.)

Additionally, despite plaintiff claims of fatigue as a result of Graves Disease and liver damage, Dr. Sharma did not limit him functionally for these complaints.[4] (Id. at 233.) He found plaintiff could stand and walk for six hours in a work day, with normal breaks. (Id.) Moreover, plaintiff's most recent treating records do not address fatigue or other problems as a result of liver damage. (Tr. at 320-416.) Plaintiff's reference to emergency room admissions for abdominal pain and nausea did not result in a definitive diagnosis. On one visit, he was only

4 Contrary to plaintiff's assertion, Dr. Sharma did not diagnose plaintiff with increased fatigue, but merely noted it based on plaintiff's reported history. (Id. at 229.)

diagnosed with "abdominal wall strain." (Tr. at 223.)

Plaintiff also points to objective evidence of elevated AST and ALT levels.[5] (Id. at 204-210, 218.) Although they may be relevant to Graves Disease or a liver disease, there is no dispute that plaintiff's Graves Disease is a severe impairment, and plaintiff has not been diagnosed with any liver disease.[6]

Plaintiff additionally refers to Dr. Besser's February 9, 2005, evaluation based on one month of treatment, wherein he limits plaintiff 's functional capacity as a result of his osteoarthritis. (Id. at 277.) As will be discussed in the next section, the ALJ properly gave this physician little weight due to the short length of treatment, and because it contradicted the opinion of plaintiff's longtime treating physician. Moreover, the clinical findings to support this doctor's opinion are "low back pain with radiculopathy (radiation)," which do not lend support to plaintiff's argument that this ailment is supported by objective evidence. (Id. at 277.)

In regard to the ALJ's reliance on the opinion of plaintiff's treating physician, Dr. Diep, plaintiff claims that subsequent tests indicated reversible ischemia and mild osteoarthritis. As discussed above, plaintiff's treating physicians had previously diagnosed mild osteoarthritis; however, they did not recommend a planned course of treatment. (Id. at 173.) Therefore, this evidence is not a reason to disregard Dr. Diep's earlier lack of objective findings. In regard to ischemia, a left ventricular myocardial perfusion scan on July 14, 2004, did "suggest[] a focal area of reversible ischemia." (Id. at 362.) As a result, Dr. Diep recommended that plaintiff be off work, but only for three months or until plaintiff had a cardiac catheterization and all tests were completed. (Id. at 260.) This recommended course of treatment presumably would help in a case where the ischemia is "reversible." Plaintiff did undergo an echocardiogram and cardiac

[5] AST stands for aspartate aminotransferase and ALT stands for alanine aminotransferase which are cholestatic liver enzymes. Elevated levels can indicate liver disease. www.liverdisease.com.

[6] Plaintiff's reference to emergency room notes indicating history of liver damage is based on his own reports. (Id. at 188.)

catheterization, which indicated no coronary artery disease. (Id. at 335.) In fact, plaintiff was later restricted from work due to low back pain only. (Id. at 324.)

Lastly, plaintiff alleges the ALJ improperly discredited plaintiff's allegations because no physician ever prescribed an assistive ambulatory device, and plaintiff did not use one at his consultative exam. However, as the ALJ pointed out, Dr. Sharma noted that plaintiff alternated walking with a limp and a normal gait, and did not use an assistive device to walk. (Id. at 232-33.) Plaintiff concedes that his need to use a cane is based on his own subjective reporting in his daily activities questionnaire, and not based on any medical opinion. Pl.'s Mot. at 13.

The ALJ gave clear and convincing reasons to discount plaintiff's subjective allegations, based on substantial evidence in the record.

B. The ALJ Property Evaluated The Opinion of Plaintiff's Treating Physician

Plaintiff contends that the ALJ erred in rejecting certain opinions of plaintiff's treating physicians Drs. Diep and Besser.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[7] Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

\\\\\

[7] The regulations differentiate between opinions from "acceptable medical sources" and "other sources." See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e). For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources." Id. Medical opinions from "acceptable medical sources," have the same status when assessing weight. See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d). No specific regulations exist for weighing opinions from "other sources." Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons. Lester , 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir. 2001),[8] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

It is true that on July 29, 2004, Dr. Diep opined that plaintiff should be off work for at least three months due to coronary artery disease and reversible ischemia, until testing and cardiac catheterization were completed, as plaintiff was at risk for a heart attack. (Tr. at 260.) Nevertheless, this opinion was not a permanent finding of disability. Plaintiff did obtain the necessary tests and catheterization, with successful results. (Id. at 358, 335.) Coronary artery disease was ruled out as a result. "Cardiac catheterization revealed essentially normal coronary arteries." (Id. at 335.) The surgeon recommended minimizing medical treatment and instead

---

[8] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

determine another cause for plaintiff's chest pain syndrome. (Id. at 335.)

The ALJ did not reject Dr. Diep's opinion in any event. Rather, he relied on this treating physician's most recent assessment, dated November 22, 2004, which was completed after plaintiff underwent cardiac catheterization and other tests to rule out coronary artery disease. (Id. at 324.) The only restriction placed on plaintiff was lifting only up to 15 pounds for one month, due to low back pain only. (Id.)

The ALJ did accord little weight to the opinion of Dr. Besser, and gave specific and legitimate reasons for doing so. First, he noted that this physician had only treated plaintiff for one month before opining on February 9, 2005, that due to plaintiff's law back pain, he could only lift up to ten pounds, sit or stand for two hours a day, but for only one hour at a time, and walk for one hour in a work day. (Id. at 21, 277, 280.) The clinical findings noted in support of these very restrictive findings were "low back pain with radiculopathy (radiation)," apparently based only on plaintiff's subjective reports and not on any objective tests. (Id. at 277.) The ALJ added that in light of x-rays taken in September, 2004, indicating only very mild osteoarthritis in the lumbar spine, the objective evidence did not support these limitations. (Id. at 328.) Further, this opinion was inconsistent with Dr. Diep's opinions over years of having treated plaintiff, as noted by the ALJ. (Id. at 22.) These reasons are specific and legitimate.

The ALJ also properly relied on consulting internist Dr. Sharma's functional capacity assessment, which limited plaintiff to lifting up to 25 pounds, bending and stooping only occasionally, standing and walking up to six hours per day, and no other limitations. (Id. at 223.) This opinion, along with Dr. Diep's treating records, constitutes substantial evidence to support the ALJ's decision.

C. Whether The ALJ Properly Evaluated Plaintiff's Residual Functional Capacity

Plaintiff contends that although the ALJ stated that he had accounted for the side effects of medications in his RFC finding, he did not discuss them. The ALJ did note that there was evidence that plaintiff experienced some limitation from his severe impairments and the

effects of medication, which were reflected in the residual functional capacity. (Tr. at 22.) As a result, the ALJ concluded that although plaintiff was somewhat limited, he was not precluded from all work. (Id.)

Defendant correctly cites Miller v. Heckler, 770 F.2d 845 (9th Cir. 1985), for the proposition that allegations of side effects from medication must be specific and clinically supported. Plaintiff's reply asserts that defendant has provided no authority for the proposition that medical documentation is required, and such a report would be dismissed as self-serving. In Miller, plaintiff had claimed that his prescription narcotics impaired his ability to work. The ALJ was found to have properly rejected this claim, stating that although it might affect his ability to operate machinery, plaintiff had "produced no clinical evidence showing that narcotics use impaired his ability to work." Id. at 849.

Here, plaintiff alleges that has taken numerous medications with varying side effects including "weakness, inability to move, dizziness, rapid heartbeats, lightheadedness, drowsiness, coldness, poor energy level, jitteriness, sickness, difficulty concentrating, fatigue, and difficulty falling asleep." Pl.'s Mot. at 17. He refers to his reports of these side effects; however, he has not pointed to any part of the *medical* record in support, but only to forms he has completed in aid of his application for disability, and his testimony. (Id. at 102, 119, 59-60.)

Pursuant to Miller, plaintiff has not submitted the proper type of evidence to support his claim that side effects of medication impaired his functional capacity. Plaintiff has also failed to cite authority for the proposition that the ALJ must explain his reasons for accounting for these side effects.

\\\\\

\\\\\

\\\\\

\\\\\

\\\\\

D. Conflict Between the Vocational Expert's Testimony and the DOT

Plaintiff asserts that the ALJ erred in adopting the vocational testimony over the DOT.[9] Due to the conflict between the vocational expert's opinion and the DOT, plaintiff contends that SSR 00-4p requires the ALJ to elicit a reasonable explanation for the conflict before relying on the VE's testimony.

The ALJ found that plaintiff could not do his past work as laborer as it was in the medium to heavy exertional level. The ALJ then determined to rely on a vocational expert due to the fact that plaintiff had limitations in ability to do the full range of light work. (Id. at 23.) He posed a hypothetical which limited plaintiff to light work which included lifting, pushing, pulling 20 pounds occasionally and 10 pounds frequently. He was required to walk and stand frequently, and sit, stoop, and bend occasionally. (Id. at 61-62.) The expert testified that plaintiff could do the jobs of cashier II, small parts assembler, fast food worker, or routing mail clerk. The limitations upon which the ALJ relied for decision included further restrictions of moderate limitation in gross manipulative ability with the right dominant feature,[10] slight limitation in ability to do simple repetitive tasks, occasional supervision, slight to moderate pain, and slight limitation in attention and concentration. There were no other limitations. (Id. at 62-63.) Based on these further limitations, the expert testified that the aforementioned jobs were eroded by 80 percent. (Id. at 63.) As a result, the ALJ concluded there were 17,000 cashier jobs remaining in California, 19,400 assembler jobs remaining in California, and 4,800 fast food worker jobs in

\\\\\

---

[9] The United States Dept. of Labor, Employment & Training Admin., Dictionary of Occupational Titles (4th ed. 1991), ("DOT") is routinely relied on by the SSA "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements. It is used by the SSA to classify jobs as skilled, unskilled, or semiskilled. (Id.) The DOT is a primary source of reliable job information for the Commissioner. 20 C.F.R. § 404.1566(d)(1).

[10] This limitation is presumably based on a previous injury to the right arm and hand in 2002, and resulting limitations imposed by Dr. Diep. (Tr. at 20, 262.)

California.[11] (Id. at 23.)

Plaintiff objects to the ALJ's conclusion because according to the DOT, these jobs require hand use in excess of moderate limitation on gross manipulation. Plaintiff cites DOT 211-462.010 which requires frequent handling for cashier II, DOT 706-684.022 which requires frequent handling for small parts assembler work, and DOT 311-472.010 for fast food worker which requires constant handling. Both the ALJ and the vocational expert did not explain the erosion figure of 80 percent based on the moderate limitation in gross manipulation and the other additional restrictions.[12]

It is true that the DOT does not necessarily control over vocational expert testimony. Johnson v. Shalala, 60 F.3d 1428, 1436 (9th Cir.1995) ("It was . . . proper for the ALJ to rely on expert testimony to find that the claimant could perform the two types of jobs the expert identified, regardless of their [DOT] classification"). Nevertheless, there must be persuasive evidence to support such a deviation. Id. at 1435. In Johnson, the vocational expert overcame the DOT presumption by testifying to available job categories in the local instead of national market, and matching the specific requirements of a particular job with the specific abilities and limitations of the plaintiff. Id. Further, the ALJ's explanation was satisfactory because he made findings of fact that supported the deviation. Id. at 1435, n. 7.

Most recently in Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007), the court went further than Johnson by specifically holding that the ALJ may not rely on a vocational expert's testimony without first inquiring whether the testimony conflicts with the DOT. The court reiterated that SSR 00-4p requires "that the ALJ determine whether the expert's testimony

---

[11] It is unknown why the ALJ did not mention the job of routing mail clerk in his decision as one of the jobs the expert testified plaintiff could do. (Id. at 62.)

[12] Defendant states the erosion as 30 percent but that percent is based on a slight limitation in gross manipulative ability, and the ALJ chose to rely on a more restrictive hypothetical which placed a moderate limitation on this ability. (Id. at 23, 63.) Therefore, erosion was 80 percent, with 20 percent of jobs remaining.

deviates from the *Dictionary of Occupational Titles* and whether there is a reasonable explanation for any deviation." Id. at 1153. Where there is a conflict between the DOT and the expert, one piece of evidence does not automatically trump over the other. Id. If the ALJ determines that a conflict exists, the ALJ must then determine whether the expert's explanation for the conflict is reasonable, and whether there is a basis for relying on the expert over the DOT. In Massachi, the court found the ALJ failed to ask the expert whether her testimony conflicted with the DOT, and if so, whether there was a reasonable explanation. Without this evidence in the record, the court could not determine whether the ALJ properly relied on the expert's testimony. Id. at 1153-1154.

In this case, neither the testimony provided nor the ALJ's findings explain such a significant deviation from the DOT. The court finds that because the three named jobs required a frequent to constant level of handling, and plaintiff did not have just a slight but rather a moderate limitation in gross manipulation, an explanation in the record was necessary.[13] The case is therefore remanded for further workup at step five of the proceedings in accordance with Massachi.

Second, the record does not explain how the expert arrived at an erosion of 80 percent based on certain limitations. It is true that no additional foundation for the vocational expert's information is required as the consultant's "recognized expertise provides the necessary foundation for his or her testimony." Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). A remand for this purpose would not ordinarily be required; however, because of important questions raised by the lack of explanation for jobs requiring much handling, any erosion should be properly explained on remand.

\\\\\

\\\\\

---

[13] Although the ALJ posed other hypotheticals to the expert based on sedentary work with similar limitations, the same problems are apparent. (Id. at 63-65.)

CONCLUSION

Accordingly, IT IS ORDERED that plaintiff's Motion for Summary Judgment or Remand is GRANTED in part pursuant to Sentence Four of 42 U.S.C. § 405(g), the Commissioner's Cross Motion for Summary Judgment is DENIED, and this matter is remanded for further findings in accordance with this order. The Clerk is directed to enter Judgment for plaintiff.

DATED: 9/6/07

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Bledsoe0703.ss.wpd